The People of the State of New York, Respondent, *v.* Frank Gilbert, Appellant.

(County Court, Otsego County, May, 1910.)

Constitutional law — Privileges and immunities of citizens and equal protection of the laws — Discriminating between peddlers with horses and without.

Municipal corporations — Powers and exercise of governmental functions — Control of streets and waters and improvement of streets — Power of city over streets.

Peddling — Constitutionality of ordinances.

> An honorably discharged soldier of the United States, who has procured a license from the county clerk in pursuance of section 32 of the General Business Law, is not guilty of misdemeanor on account of the violation of a municipal ordinance forbidding all persons from occupying or obstructing any portion of any street for the sale of certain specified commodities, in the absence of proof of his having obstructed the street.
>
> An ordinance which prohibits any person from selling peanuts or popcorn from a vehicle, unless drawn by a horse or horses, is unlawful, because it unreasonably discriminates against those who might engage in such business from vehicles drawn by hand.

Appeal from a judgment of conviction rendered in the City Court of Oneonta.

Alva Seybolt, for appellant.

U. G. Welch, district attorney, for respondent.

Kellogg, J.   This is an appeal from the judgment of conviction, rendered in the City Court of Oneonta, upon the verdict of a jury, wherein the defendant was duly convicted of the crime of misdemeanor for having violated amended

ordinance No. 4 of the said city on the 16th day of October, 1909.

The ordinance in question is as follows: "No person or persons or corporation shall be permitted or licensed to occupy or obstruct any portion of any street within this city with a cart, wagon, or other vehicle, unless drawn by a horse or horses, for the purpose of selling, or offering for sale, peanuts and popcorn, and either of them. Any violation of this ordinance shall constitute a misdemeanor."

The appellant contends that his arrest, pursuant to the ordinance in question, was illegal and unlawful, and that he had the right to vend the prohibited articles at the time and place in question, by reason of a license which was duly issued to him by the clerk of the county of Nassau, in this State, as an honorably discharged soldier of the United States, under and pursuant to section 32 of the General Business Law of this State.

The facts are practically undisputed. It appears that the appellant, on the evening of October 16, 1909, was on Main street in said city with his peanut roaster and corn popper, a cart about two feet wide and about four feet long, on the pavement of the street or roadway, close to the curb. There is no proof whatever that his cart obstructed the street, or disturbed any one, or that he was asked to move along. So far as the proof shows, the only selling and vending, and the only alleged violation of the law, took place when one of the aldermen purchased a bag of popcorn for five cents.

Section 32, General Business Law (Consol. Laws, chap. 20), formerly chapter 371, Laws of 1896, provides:

"Licenses to soldiers and sailors.— Every honorably discharged soldier, sailor or marine of the military or naval service of the United States, who is a resident of this state and a veteran of the late rebellion, or of the Spanish-American war, or who shall have served beyond sea, shall have the right to hawk, peddle, vend and sell by auction his own goods, wares and merchandise or solicit trade within this state, by procuring a license for that purpose to be issued as herein provided.

4

"On the presentation to the clerk of any county in which any soldier, sailor or marine may reside of a certificate of honorable discharge * * * which discharge shall show that the person presenting it is a veteran of the late rebellion or of the Spanish-American war, * * * such county clerk shall issue without cost to such soldier, sailor or marine a license certifying him to be entitled to the benefits of this article."

Chapter 371, Laws of 1896, was apparently passed, originally, to relieve war veterans from taking the license provided for by section 60 of the Domestic Commerce Law of the State (Laws of 1896, chap. 376); but this license under this statute did not relieve a person from the effect of any municipal regulations as to licenses, but was in addition to any such regulations (§ 64); and the same rule was held to apply under the Veteran Act. City of Buffalo v. Linsman, 113 App. Div. 585; City of Gloversville v. Enos, 35 Misc. Rep. 724, 728, 729.

Even though the law of that date (Laws of 1896, chap. 371) was correctly stated in Buffalo v. Linsman, *supra,* the enactment of section 35, General Business Law (Consol. Laws, chap. 20), has changed the law and expressly excepted soldiers' licenses from municipal regulations. Section 35, last referred to, reads as follows:

"Municipal regulations.— This article shall not affect the application of any ordinance, by-law or regulation of a municipal corporation relating to hawkers and peddlers within the limits of such corporation, except as otherwise provided in section thirty-two hereof, but the provisions of this article are to be complied with in addition to the requirements of any such ordinance, by-law or regulation."

The provisions relating to hawkers and peddlers, which are thus to be complied with in addition to the requirements of any ordinance or by-law of a municipality, are those of section 30 of the Business Law, which relate to hawkers and peddlers, and specify what they may and may not do, and how they may procure a license; but this appellant is exempted from the provisions of section 30, and such exception is again provided in section 35 thereof.

Thus it clearly appears, from section 35 of this statute, that every honorably discharged soldier, sailor or marine of the military or naval service of the United States, who is a resident of this State, and a veteran of the late Rebellion, or of the Spanish-American War, shall have the right to hawk, peddle, vend and sell by auction his own goods, wares and merchandise or solicit trade within this State, by procuring a license for that purpose to be duly issued to him as provided by section 32 of said laws.

The appellant, therefore, having produced a license, duly issued to him by the Nassau county clerk, was authorized to hawk, peddle and vend merchandise anywhere in the State of New York, under the provisions of chapter 25, section 32, of the Laws of 1909, known as the General Business Law, and had a lawful right to vend and sell his peanuts and popcorn from his push-cart, not only outside of, but within, the corporate limits of the city of Oneonta, and upon, along and about the streets thereof; subject, however, to such reasonable regulations, as regards the use of his push-cart on the streets and thoroughfares of said city, as the board of aldermen thereof may have made, not amounting to a prohibition.

The ordinance in question, therefore, is invalid, so far as it contravenes section 32 of the General Business Law.

The power of a municipal council 'to enact by-laws, delegated by the Legislature, cannot be more extensive than the power of the delegating body; therefore, by-laws and ordinances enacted must not be in contravention of the Constitution or statutes of the United States or State. 1 Smith Mun. Corp., § 519; 1 Dillon Mun. Corp., § 317. For a Legislature to delegate powers which might be used in hostility to the general laws of the State would be a *felo de se* that might render all general legislation inoperative within the limits of the corporation. It is a well-settled rule of law that, in general, all ordinances which irreconcilably conflict with the charter or with the State statutes are void. 1 Smith Mun. Corp., § 521; State v. Camden, 50 N. J. L. 57; 1 Dillon Mun. Corp., § 319.

A by-law, enacted in pursuance of a special charter au-

thority, has the same force and effect as a law within the municipal boundaries as though it had been enacted by the general Assembly; and such a by-law has been repeatedly sustained by the courts, although contravening general laws, on the ground that it is equivalent to a special statute repugnant to a general one and, therefore, operative as an implied repeal of the general law within the municipal territory.

But, lacking such special authority to enact a particular ordinance, a municipality may not ordain by-laws in contravention of said statute, whether general or special. It is a well-settled rule of law that what the statute has licensed, or expressly permitted, the municipality cannot forbid, nor may it license what the State has expressly interdicted. 28 Cyc. 267; Cowen v. Village of West Troy, 43 Barb. 48; Wood v. City of Brooklyn, 14 Barb. 425; New York v. Nichols, 4 Hill, 209.

The appellant here has not the right, nevertheless, under the license issued to him pursuant to the statutes of the State, to occupy any stand with cart, sleigh or otherwise, or to take permanent and exclusive possession of any portion of a highway in a city; as such permanent occupancy of the streets on his part would not come properly within his lawful rights under his veteran's license, as he has not the right to take exclusive possession of any part thereof. Eggleston v. Scheibel, 60 Misc. Rep. 250; Matter of Nightingale, 11 Pick. (Mass.) 168.

The occupation in which he was engaged, however, being a lawful one, he has the same right to occupy them at all times for business purposes as any truckman, cabman or merchant who uses the streets, even though it does temporarily obstruct others.

An ordinance prohibiting any carriage, or hack, or vehicle from stopping or standing on certain specified streets, except when engaged in receiving or unloading passengers or freight, and making it a misdemeanor for so doing, has been declared unreasonable, oppressive and unlawful. 1 Smith Mun. Corp., § 526; Ex parte Battis, 40 Tex. Cr. App. 112; 48 S. W. 513.

Aside from its invalidity under section 32 of the General Business Law, the ordinance is unreasonable, a partial regulation, oppressive and in restraint of trade. The ordinance, in effect, states that no person shall be licensed to occupy any portion of any street with any vehicle, unless drawn by one or more horses, for the purpose of selling peanuts or popcorn.

Courts, in construing statutes, sometimes look into the object and purpose which the law making power had in mind. What were the motives, and what were the objects, of the common council in enacting this ordinance? Why not permit a sale of peanuts and popcorn from small push-carts run by hand as well as from two-horse wagons? Why is the sale of a bag of peanuts from a push-cart a crime, to wit: a misdemeanor, and from a wagon drawn by two horses, perfectly legitimate?

The reason clearly is not obvious, and it must be construed as special and not general in its proposed operation, and is, therefore, void. Trustees of Canajoharie v. Buel, 43 How. 155; 1 Smith Mun. Corp., § 526; Pierce v. City of Aurora, 81 Ill. App. 670; Carrollton v. Bazette, 159 Ill. 284.

The ordinance prohibits any person from selling peanuts or popcorn from a vehicle, unless drawn by a horse or horses, because it prohibits the licensing of such person. It might be assumed, possibly, that the common council making the ordinance had in mind the purpose of preventing obstructions in the streets; but, while a man with a team of horses attached to a wagon may be licensed, a man with a two by four cart is absolutely prohibited. For a city to discriminate in favor of any class of persons in the same business is equally unlawful. 13 Am. & Eng. Ency. of Law, 552. There is a broad difference, however, between regulation and prohibition.

A municipal corporation has the power to regulate the use of its streets and the business of hawking and peddling by every one, and to license and regulate the useful trades and occupations; but the power of regulation is not absolute, and is subject to the higher law of the State, and must be reasonable (25 Cyc. 603); nor can such regulation be incon-

sistent with the general principles of the common law of the land, particularly those having relation to the liberty of the subject, or the rights of private property. 1 Dillon Mun. Corp., § 319; Felt Makers v. Davis, 1 Bos. & P. 98; Rex v. Maidstone, 3 Burr. 1837; London v. Vanacre, 1 Ld. Raym. 496.

It is the presumption that a statute is reasonable; but where an ordinance is enacted in the exercise of police power, the test of its validity is whether it is reasonable. City of Buffalo v. Hill, 79 App. Div. 402; People ex rel. Lieberman v. Vandecarr, 81 id. 128; affd., 174 N. Y. 440.

Gray, J., in writing the opinion of the court in Stamford v. Fisher, 140 N. Y. 187, said: "The legislature has power to authorize municipal corporations to regulate hawking and peddling in its streets.

"As a statute, however, is in restriction of the common law and of the general right of persons to pursue a legitimate and innocent occupation, and to deal rightfully and usefully with their property, it should receive a strict construction, and its operations should be confined to those cases in which it is plainly discoverable that mischief exists and for which the law was intended to provide a remedy."

Except where the corporation has special charter power to enact the by-law or ordinance, the courts not only annul ordinances and by-laws because they contravene the higher laws of constitutions and statutes, but they do not hesitate to declare them void and inoperative because they appear to the judicial mind unreasonable or oppressive.

We are unable to see how the ordinance in question was necessary or proper. There is no evidence in the case that the appellant, at any time, had obstructed the street with his cart to the injury of any one.

Williams, J., in reversing the conviction in Buffalo v. Linsman, *supra,* said: "In no way was the ordinance necessary for the preservation of public health or the good of the city. It in no way tended to protect the public health or public order. Hawking and peddling is recognized as a legitimate business by the Legislature, and is so recognized

by the city and its ordinance, and is subject always to reasonable regulation."

The foregoing language may be said to apply, in all respects, with full force and effect, to the case at bar.

The ordinance was, therefore, invalid, and no conviction could properly be had for a violation thereof.

The judgment was erroneous and should be reversed, and the defendant discharged.

Judgment reversed.