By the Court.
 

 The brief of defendants recites the following history of the case:
 

 
 *17
 
 “The plaintiff-appellee sought and obtained in the Court of Common Pleas of Montgomery County a finding that ordinance No. 16059 of the city of Dayton, Ohio, is unreasonable; that it has no real or substantial relation to public safety, health or welfare, and therefore that it is null and void and violative of the Constitutions of Ohio and the United States. That court accordingly granted an injunction permanently enjoining the enforcement of the said ordinance.
 

 “The defendants-appellants appealed on questions of law and fact to the Court of Appeals of Montgomery County, to which the cause was thereafter duly submitted on the pleadings, the testimony taken in the Common Pleas Court, duly perfected and filed as a bill of exceptions and constituted by the parties with the approval of the appellate court as all of the facts of the case. The Court of Appeals rendered a decision substantially identical with that of the Common Pleas Court and affirmed [sic] its judgment in all particulars.
 

 “This is an appeal from that judgment.”
 

 As to the issue and question presented, defendants ask: “Does an Ohio community possess power to ban the transaction of business upon its streets and other public places?”
 

 Plaintiff argues that the enforcement of ordinance No. 16059 does not regulate but entirely destroys its legitimate business. The plaintiff’s right to pursue its business is protected by Sections 1 and 16 of Article I of the Constitution of Ohio as well as by the Fourteenth Amendment to the federal Constitution.
 

 The fact that a legislative body may not discriminate among persons following the same occupation or business is too well known to require the citation of authority. Not only is discrimination apparent on the face of ordinance No. 16059, but the evidence in this case shows that there is a discrimination between dealers in comparable merchandise and that many other street peddlers, hawkers and hucksters are licensed to
 
 *18
 
 use the streets of the city of Dayton for the sale of their merchandise.
 

 This ordinance prohibits the prosecution of a lawful business. It was stipulated that the following ordinances were in full force and effect in 1946 in the city of Dayton, Ohio, to wit:
 

 “City ordinances: 1063-1, 2, 3, 14. 643, 44, 45, 46, 54, -2, -3, -4, -5, 728, 728-17, 717-1, 718, 719, 720, 721. 750, 751, 752 and 752-1.”
 

 These various ordinances required licenses to be taken out by hawkers, peddlers and hucksters for the prosecution of their respective lines in the city of Dayton.
 

 Section 643 provided as follows:
 

 “Hawker’s License Required. It shall be unlawful for any person as a hawker, peddler, or huckster to sell or offer to sell, whether through himself or others, on any of the highways or public grounds within the city of Dayton, any fruits, vegetables, meat, poultry, fish, ice, coal, provisions, goods, wares, or merchandise of any description until he shall first have obtained from the city accountant a license so to do. Provided, however, that this ordinance shall not apply to or require the owner of any product of his own raising, or the manufacturer of any article manufactured by him to obtain a license to vend and sell in any way, by himself or agent, any such article or product.”
 

 Graduated fees were provided for according to the method of transportation. For instance, Section 646 of the Code of General Ordinances of Dayton, provided :
 

 (a) If the transportation is carried on by means of a vehicle drawn or propelled by motor power, the license fee shall be $15 for each license issued for a period of six months, ending January 31st or July 31st, as the case may be.
 

 (b) If carried on by means of a vehicle drawn by animal power, the license fee shall be $10 for each li
 
 *19
 
 cense issued for a period of six months ending January 31st or July 31st, as the case may be.
 

 (c) If carried on by means of a hand-drawn vehicle or basket or other hand container, the license fee shall be $5 for each license issued for a period of six months.
 

 It was stipulated between the parties as follows:
 

 “It is further stipulated and agreed that the city accountant of the city of Dayton, pursuant to the ordinances hereinabove set forth, during 1946, licensed 70 individuals to sell in conformity with the ordinances of the city of Dayton, from push carts or baskets, and that each of said licenses contained the bold print on the face thereof the following language: ‘Subject to all ordinances regulating licenses of the city of Dayton, Ohio’ and said licensees were licensed to sell among others the following items:
 

 “Frozen foods, shopping bags, novelties, artificial flowers, balloons, Christmas trees, pictures and signs, furs, mops, merchandise, eggs, candy and chewing gums, fruits and vegetables from carts, medicines, table linen and tapestries, household novelties, razor honing compound, push carts, fruits and vegetables, poultry and eggs, confections, floor coverings, lawn sprinklers, rubber mats and Aero-Sal dispensers, pies.
 

 “It is further stipulated and agreed that the city accountant issued licenses in 1946 to 36 auto vehicle peddlers for the sale of the following items:
 

 “Fruits and Christmas trees, fruits and vegetables, melons and fish; and that these licenses were also subject to the identical restrictions quoted above in connection with the first group.
 

 “It is further stipulated and agreed that the health officer of the city of Dayton, Ohio, during 1946, issued health permits to 146 individuals pursuant to ordinances for the sale of items including the following:
 

 “Vegetables and eggs, Beechnut food products, farm products, eggs and farm produce, fruits and vege
 
 *20
 
 tables, dressed poultry, fish, preserves, candy, pies, confections, meat, home baked goods, boxed candy and tea.”
 

 • The Court of Appeals in its journal entry decreed as follows:
 

 “* * * the court finds that ordinance No. 16059 of the city of Dayton, Ohio, is unwarranted, unreasonable and discriminatory, and that the provisions of said ordinance have no real and substantial relationship to public safety, public health or public welfare, and that accordingly said ordinance is null and void and in violation of the Constitution of the state of Ohio and the Constitution of the United Staes.”
 

 The trial court had decreed formerly:
 

 “Upon consideration whereof the court finds that the plaintiff was engaged in a lawful business and that ordinance No. 16059 of the city of Dayton, Ohio, is unwarranted, unreasonable and discriminatory, and that the provisions of said ordinance have no real and substantial relation to public safety, public health or public welfare, and that accordingly said ordinance is null and void and in violation of the Constitution of the state of Ohio and the Constitution of the United States. The court therefore finds that the prayer of the petition should be granted and that the restraining order heretofore granted to the plaintiff and against the defendants, their officers and agents, should be made permanent. * * *”
 

 We agree with the decrees of both of the lower courts.
 

 Therefore, the decree of the Court of Appeals should be, and hereby is, affirmed.
 

 Decree affirmed.
 

 Weygandt, C. J., Matthias, Hart and Turner, JJ., concur.
 

 Zimmerman, Stewart and Taft, JJ., dissent.